IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| v. | § | Criminal Action No. **3:18-CR-316-L** |
| | § | |
| **ERIC DEMOND MONTGOMERY.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Motion to Suppress Unlawfully Obtained Evidence and Statements (Doc. 22), filed by Defendant Eric Demond Montgomery ("Defendant" or "Montgomery") on September 17, 2018. On November 6, 2018, the court held a hearing on Defendant's motion. After considering the motion, response by the Government, evidence, and applicable law, and for the reasons stated on the record at the suppression hearing, the court **denies** the Motion to Suppress Unlawfully Obtained Evidence and Statements both with respect to the evidence seized from the vehicle and the statements made by Defendant to law enforcement during the traffic stop.

**I.    Factual and Procedural Background**

Montgomery was charged in a one-count Indictment for Possession of a Firearm by a User of a Controlled Substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2), after law enforcement officers conducted a warrantless search of his vehicle following a traffic stop.

On June 5, 2018, Montgomery was stopped by Corporal III Jay H. Stone ("Stone") and Trooper Brandon Walmsley ("Walmsley") of the Texas Department of Public Safety's Highway Patrol Division ("DPS"). The officers stopped Montgomery as part of an interdiction effort to intercept activity at a suspected illegal gambling house known as the Blue Dragon. About one and one-half months prior, the officers were made aware that the Dallas Police Department ("DPD") was investigating the Blue Dragon. Tr. 6. The officers had previously been advised by DPS Special

**Memorandum Opinion and Order – Page 1**

Agent Brant Doddy ("Doddy") and DPD Officer Misty VanCuren ("VanCuren") that Montgomery worked in a security position for the Blue Dragon, was typically armed, and was on felony drug probation in Dallas County. Tr. 8. On June 5, after Doddy and VanCuren observed Montgomery driving away from the Blue Dragon, they directed Stone and Walmsley to make a traffic stop based on observed violations. Tr. 6. Doddy advised Stone that he observed Montgomery making several lane changes without signaling. Tr. 9-10.

Once Stone and Walmsley caught up with Montgomery's vehicle, they observed him speeding and, after running his license plate through their system, believed him to be driving with an expired registration, at which point they initiated the traffic stop. Tr. 11. As they approached Montgomery's vehicle, Stone immediately smelled marijuana odor emanating from the passenger window, and Walmsley observed small pieces of marijuana on the driver's side of Montgomery's vehicle. After this initial contact, Walmsley and Stone spoke behind Stone's vehicle to discuss their observations. This brief conversation can be heard in Walmsley's bodycam footage presented to the court at the suppression hearing.

Stone informed Montgomery that he would receive warnings for speeding and failing to signal a lane change. Montgomery had advised Stone that he registered the vehicle earlier that day and provided him a confirmation receipt. Tr. 13, 17. Stone then told Montgomery to exit the vehicle. Stone performed a pat-down of Montgomery with his consent and advised him to sit in the patrol vehicle while he ran a driver's license, warrant, and registration check. As Stone performed the computer checks, he and Montgomery had a conversation about the renewed registration, Montgomery's employment at the Blue Dragon, and his criminal history. Stone told Montgomery he had smelled marijuana from the vehicle and that Walmsley had observed marijuana residue. He then asked Montgomery if there was anything in the vehicle about which the officers needed to be aware. Montgomery responded that there was a pistol underneath the

**Memorandum Opinion and Order – Page 2**

passenger seat. The statements elicited during this conversation are now at issue because *Miranda*[1] warnings were not provided.

Stone then called VanCuren and Doddy to alert them that he intended to perform a vehicle search, and the law enforcement officers responded that they desired an arrest of Montgomery for Unlawful Possession of a Firearm. The vehicle search produced a semi-automatic handgun, drugs, and cash. Montgomery was placed under arrest for Unlawful Possession of a Firearm.

Montgomery now moves to suppress the following evidence: (1) all items seized by law enforcement during the search of his vehicle, specifically a handgun, small bags of marijuana, Xanax tablets, a cell phone, and cash; and (2) statements made by him to Stone during the interaction in the patrol vehicle.

Montgomery makes two arguments in support of his motion. First, he argues that the search of his vehicle was unreasonable because its purpose was unrelated to the traffic stop, and the officers lacked reasonable suspicion to perform an unrelated investigation. Second, Montgomery argues that Stone violated his constitutional rights by failing to give him *Miranda* warnings before questioning him in the patrol vehicle. Montgomery argues that the questioning amounted to a custodial interrogation because: (1) no reasonable person would have believed that he or she was at liberty to leave under the circumstances, and (2) the officer asked questions that he should have known were reasonably likely to elicit an incriminating response, which they did, as Montgomery admitted to working for the Blue Dragon and having a .45 caliber handgun in his vehicle.

In response to Montgomery's first argument, the Government contends that Stone's detection of marijuana emanating from his vehicle during the traffic stop formed probable cause to search the vehicle and to request that Montgomery exit the vehicle for further questioning.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Regarding Montgomery's argument to suppress his statements, the Government contends that *Miranda* warnings were not required because the questioning was pursuant to an ordinary traffic stop that did not rise to the level of a custodial interrogation. The Government further contends that a *Terry*[2] violation does not occur when an officer asks a motorist questions while waiting for the results of a computer check. The Government alternatively contends that even if the court suppresses the statements, the officers had probable cause to search the vehicle based on the detected odor of marijuana, and, thus, did not need to rely on Montgomery's admission about possessing the firearm for the search to be proper.

## II. Discussion

### A. Evidence Seized from Montgomery's Vehicle

Absent consent, probable cause must exist for a law enforcement officer to search a vehicle without a warrant. *See United States v. Petty*, 601 F.2d 883, 890 (5th Cir. 1979). "An automobile's mobility is an exigent circumstance permitting a search without a warrant so long as there is probable cause." *Id*. Less rigorous warrant requirements also apply to automobiles because of the reduced expectation of privacy in them. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *California v. Carney*, 471 U.S. 386, 390-91 (1985). Consequently, "[e]ven in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception" to the warrant requirement. *Id*. at 391.

"[P]robable cause means 'a fair probability that contraband or evidence of a crime will be found.'" *United States v. Sokolow*, 490 U.S. 1, 8 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause exists when "the facts and circumstances before the officer are such as to

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

warrant a [person] of prudence and caution in believing that the offence has been (or is being) committed." *Petty*, 601 F.2d at 890 (internal quotation marks and citation omitted). Thus, a warrantless search of an automobile is constitutionally permissible if an officer has probable cause to believe the vehicle contains illegal contraband. *Labron*, 518 U.S. at 940; *Carroll v. United States*, 267 U.S. 132, 153 (1925). In determining whether probable cause exists to believe that a vehicle contains contraband, courts "look to the totality of the circumstances and the inferences that flow therefrom." *Petty*, 601 F.2d at 890. "[T]he smell of marihuana alone [by officers experienced in drug detection] may constitute probable cause to search a vehicle." *United States v. Ibarra–Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999); *United States v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990) ("Distinctive odors, detected by those qualified to know them, may alone establish probable cause."); *United States v. Lork*, 132 F. App'x 34, 35-36 (5th Cir. 2005) (police officer's immediate detection of marijuana odor upon approaching a defendant's vehicle was sufficient to form probable cause to search the vehicle). Moreover, this court has previously held that a law enforcement officer who smells marijuana in a suspect's vehicle has probable cause to believe contraband or evidence of a crime will be found in that vehicle and, thus, may properly make a warrantless search of it. *United States v. Alberty*, No. 3:14-CR-7-L, 2014 WL 2159259, at *4 (N.D. Tex. 2014).

In this case, Stone had probable cause to search Montgomery's vehicle when he detected the strong odor of marijuana emanating from the passenger side window. Stone detected the odor of marijuana emitting from the passenger side as soon as Montgomery lowered the window. Ex. 2 of Def.'s Mot. to Supp. at 3, ¶ 7. The record reflects that Stone was well qualified to detect the odor of marijuana. Tr. 4-5. Walmsley, who also approached Montgomery's vehicle, observed marijuana shake (residue) on the driver's side, which corroborates Stone's belief about contraband being present in the vehicle. Ex. 2 of Def.'s Mot. to Supp. at 3, ¶ 9. At the suppression hearing,

Montgomery did not make any factual challenges to the credibility of the officers' observations or their version of the events. *See United States v. Curry*, No. 3:09-CR-0053-B, 2009 WL 4825186, at *2-3 (N.D. Tex. 2009) (in which the defendant challenged the credibility of the officers' detection of marijuana odor by putting on witnesses at the suppression hearing who testified that the defendant had not smoked marijuana that night and that he enforced a "no smoking policy in the vehicle," and the court nevertheless determined the officers credibly testified and had sufficient experience in identifying such narcotic odors, and thus had probable cause to search the vehicle).

At the suppression hearing, Montgomery conceded that if the court made a factual finding that the officers credibly detected marijuana, probable cause existed to search anywhere in the vehicle where marijuana could be found. Tr. 57-58. The court made a factual finding on the record that Stone's testimony was credible based on his demeanor, background, experience, training, and the bodycam footage of the traffic stop corroborating his version of events. Tr. 56. Therefore, the court determines that Stone had probable cause to search Montgomery's vehicle based on his observation and experience, and Walmsley's credible observation of marijuana in the vehicle. Thus, the only remaining issue in dispute is whether a *Miranda* violation occurred when Stone questioned Montgomery in the patrol vehicle.

### B. **Statements Made to Stone**

*Miranda* warnings must be administered prior to "custodial interrogation." *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc) (quoting *Miranda*, 384 U.S. at 479). "A suspect is … 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree [that] the law associates with formal arrest." *Id*. at 596. As there was no formal arrest prior to questioning, the issue is whether Montgomery was otherwise in custody that equates to a formal arrest. "'Two discrete inquiries are essential to the

determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave.'" *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011)).

Ordinary traffic stops do not place a person "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 437-39 (1984). Traffic stops can, however, become custodial. "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id*. at 440.

A determination of whether a defendant is "in custody" for *Miranda* purposes depends on the "totality of circumstances." *United States v. Coleman*, 610 F. App'x 347, 353 (5th Cir. 2015) (citing *Cavazos*, 668 F.3d at 193 (citations omitted)). "Some important factors include: (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave." *Id*. (citing *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015)). No one fact is determinative. *Wright*, 777 F. 3d at 775.

Montgomery argues that *Miranda* warnings were required because the interrogation occurred under circumstances in which a reasonable person would not believe that he is free to leave. In his motion to suppress, Montgomery originally asserted that he was handcuffed in the patrol vehicle for questioning and those circumstances would have indicated he was not free to leave. At the suppression hearing, after the court watched the bodycam footage and pointed out that it clearly showed that Montgomery was not handcuffed at any point prior to his formal arrest, Montgomery changed his position on this fact because he had not seen the footage prior to the

hearing. Montgomery stated that he still maintained that no reasonable person under the circumstances would feel free to leave. Tr. 44-45.

Montgomery also argues that Stone was required to give *Miranda* warnings because he asked questions he should have known were reasonably likely to elicit an incriminating response. Specifically, Stone knew Montgomery might be in possession of a weapon and knew that he was on felony probation and prohibited from carrying a weapon, as he inquired about the car's contents. After the hearing and pursuant to the court's request, Montgomery filed additional briefing (Doc. 29), arguing that the public safety exception to the *Miranda* requirement does not apply because there was no imminent threat of safety after Stone performed a pat-down and discovered Montgomery was not armed. He contends that he did not have immediate access to the gun in his vehicle while seated in Stone's patrol vehicle and, therefore, Stone could not reasonably have believed he or the public was in imminent danger to warrant asking about what he might discover in the vehicle. In the absence of any safety threat, he argues, Stone's questions were instead designed to find any cause to arrest him.

The public safety exception applies immediately upon arrest, when an officer asks a suspect questions designed to elicit testimonial evidence to secure officer safety or the safety of the public. *United States v. Raborn*, 872 F.2d 589, 595 (5th Cir. 1989) (citing *New York v. Quarles*, 467 U.S. 649, 659 (1984)). In cases applying the exception when an officer asked about the location of a weapon prior to conducting a search, the officers had already arrested the suspect and, therefore, were required to give *Miranda* warnings. *Id.*; *United States v. Green*, 388 F. App'x 375, 376 (5th Cir. 2010). In this case, Montgomery had not been formally arrested when Stone engaged him in questioning. Applying the public safety exception presupposes that *Miranda* warnings were required in the first place and improperly not given. This analysis, therefore, is premature to the

court's determination as to whether Stone was required to give *Miranda* warnings to Montgomery at any point prior to his formal arrest.

The Government maintains that law enforcement agents are permitted to ask questions for their own safety and in this case, Stone, knowing he was going to perform a search of the vehicle, asked Montgomery an open-ended question about potential contents in the vehicle about which he needed to be aware, which might cause him immediate death or bodily injury while performing the search. Tr. 69. In its Response, the Government cites two Fifth Circuit cases holding that questioning during a traffic stop while officers await the results of a computer check do not violate *Terry*. *United States v. Crain*, 33 F.3d 480, 485 (5th Cir. 1994), and *United States v. Shabazz*, 993 F.2d 431, 435-37 (5th Cir. 1993). The issue, however, in those cases was whether officer questioning during a *Terry* stop impermissibly exceeded the duration of the stop to justify the detention for purposes of Fourth Amendment violations; they do not address at which point *Miranda* warnings are required to determine whether specific statements elicited during that questioning are admissible as evidence.

The Supreme Court case, *Berkemer v. McCarty*, provides the framework for determining the admissibility of statements made during the detention of a motorist at a traffic stop prior to the officer giving *Miranda* warnings. 468 U.S. at 423. In *Berkemer*, a state trooper stopped the defendant after observing his car weaving in and out of a lane on a highway. *Id*. The trooper instructed him to exit his car and then performed a field sobriety test, after which the trooper asked whether he had been using intoxicants. *Id*. The defendant responded that he had consumed alcohol and smoked marijuana, which led the trooper to formally place him under arrest for operating a motor vehicle while under the influence of alcohol or drugs. *Id*. In determining whether the defendant's admission to using intoxicants was admissible without his having first received *Miranda* warnings, the Court held that no warnings were required because the defendant was not

**Memorandum Opinion and Order – Page 9**

in "custody," even though the trooper had already decided as soon as the defendant stepped out of his car that he would be taken into custody and charged with a traffic offense. *Id*. The Court reasoned that the circumstances did not objectively signal to the defendant that he was "in custody" because only a short period of time elapsed between the stop and the arrest, the questioning was performed at a location visible to passing motorists, a single police officer asked a modest number of questions, and at no point was the defendant told his detention would not be temporary. *Id*. at 442. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id*.

In *United States v. Coleman*, the Fifth Circuit reviewed whether statements made during a traffic stop should have been suppressed because they were made without *Miranda* warnings. 610 F. App'x at 353. In *Coleman*, the defendant was pulled over for traffic violations by officers who had received information that the defendant might also be involved in a narcotics violation. *Id*. at 350. At the beginning of the stop, the officer asked the defendant where he was traveling from, determined the car was rented by another individual, and then asked the defendant to produce a rental agreement, which the defendant did not have. *Id*. Based on the absent rental agreement and the defendant's demeanor, the officer asked for consent to search the vehicle, which the defendant gave. *Id*. Before conducting the search, the officer asked the defendant "if he had any narcotics, weapons, or large sums of money in the car and patted [the defendant] down, all of which [the officer] normally did in similar situations." *Id*. The defendant responded that he always carried money with him, and the officer asked how much money he had in the car, to which the defendant replied that he had $80,000. *Id*. A search of the vehicle produced $186,000 in cash. *Id*. The officer never provided *Miranda* warnings.

Applying the Fifth Circuit's factors in *Wright*, the court held that the defendant was not "in custody" for purposes of *Miranda*. *Id.* at 353. The court noted that the police officer did not engage the defendant in "specific, lengthy or accusatory questioning about any suspected offense"; the stop was conducted on "the side of a public roadway, where a traffic stop is normally conducted"; and the defendant was "either sitting in his car or standing outside it, unrestrained, during the entire stop." *Id.* The court noted that although the 30-minute stop was "arguably somewhat longer than a typical traffic stop, the length was extended primarily because reasonable suspicion had arisen regarding a different offense," requiring the officer to run a check on the defendant's unrelated warrant. *Id.*

In *United States v. Broca-Martinez*, the court considered whether *Miranda* warnings were required when the defendant was questioned while detained in the backseat of a patrol vehicle during a traffic stop. 162 F. Supp. 3d 565, 570 (S.D. Tex. 2016). The court concluded that although detaining a suspect in the backseat of a police car is not routine in traffic stops, the defendant was not "in custody" for purposes of *Miranda*. In so concluding, the court relied heavily on the fact that the defendant was never handcuffed or physically restrained in any other way. *Id.* The court cited an Eleventh Circuit case and two district court cases in which suspects were held in the back of a police car, and the key factor to whether there was a custodial interrogation was whether they were placed in physical restraints. *Id.* (citing *United States v. Muegge*, 225 F.3d 1267, 1271 (11th Cir. 2000); *United States v. Ross*, 400 F. Supp. 2d 939, 945 (W.D. Tex. 2005); *United States v. Duheart*, No. CRIM.A. 11-67-BAJ, 2011 WL 5854942, at *6 (M.D. La. Nov. 21, 2011)). In addition to the court's emphasis on the absence of handcuffs, the court determined that the defendant was not "in custody" because he underwent less than five minutes of questioning; he was allowed to exit the vehicle when he got out from the backseat to sign the consent-to-search

form; and the purpose of the detention was investigatory and based on reasonable suspicion that criminal activity, other than the traffic offense, was afoot. *Id.*

In light of these decisions and the factors emphasized by the Fifth Circuit, the court determines that Montgomery was not "in custody" and, therefore, the statements he made to Stone prior to his arrest are admissible. The circumstances surrounding the questioning "never meaningfully advanced beyond what is typical during an ordinary traffic stop" and would objectively indicate, to a reasonable person, that Montgomery was temporarily in detention, rather than "in custody." *See Coleman*, 610 F. App'x at 353. Based on the court's review of the bodycam footage, the encounter, from the initial stop to the arrest, maintained a respectful tone with no trace of coercion or intimidation. The questioning in the vehicle lasted only four to five minutes, and Stone was the only officer questioning him, as Walmsley sat in the backseat. Tr. 22. Before taking a seat in the patrol vehicle, Montgomery was informed by Stone he would only be receiving warnings for the traffic violation, and at no point was he advised that the detention might lead to an arrest. *Cf. Bengivenga*, 845 F.2d at 597 n.16 ("The awareness of the person being questioned by an officer that … the police already have ample cause to arrest him, may well lead him to conclude, as a reasonable person, that he is not free to leave, that he has been significantly deprived of his freedom.") While Montgomery sat in Stone's patrol vehicle, Stone conducted computer checks that, to a reasonable person in Montgomery's position, appeared to be incident to the traffic stop. Stone had initially advised Montgomery he would be cited for an expired registration, to which Montgomery explained that he had registered the vehicle that day and had a receipt to confirm it. Tr. 13, 17. During the course of questioning in the vehicle, Stone reviewed the receipt and asked Montgomery questions to further corroborate his account. Tr. 17.

Although Montgomery was seated in the front seat of Stone's vehicle, he was never handcuffed or physically restrained in any other way. *See Broca-Martinez*, 162 F. Supp. 3d at 570.

Once Stone completed the computer checks, Montgomery was permitted to exit the vehicle and sit unrestrained on the grass adjacent to the curb while Stone performed the vehicle search. Montgomery was only handcuffed once the vehicle search was complete and Stone had discovered the weapon. As Montgomery was never physically restrained before he was formally arrested, and in light of the fact the entirety of the stop was performed on the side of a public roadway, the court determines that his brief detention in the patrol vehicle did not render the questioning custodial.

Montgomery contends that the nature of questioning was designed to elicit incriminating statements because Stone questioned him regarding his employment, while knowing the Blue Dragon was under DPD surveillance, and questioned him about whether there was anything in the vehicle about which he needed to be aware, knowing Montgomery was likely carrying a weapon. According to Montgomery's counsel at the suppression hearing, the only statements actually at issue are those elicited by Stone's question about potential contents in the vehicle, because Montgomery's response about the gun's location under the passenger seat could be used by the Government at trial to prove the essential element of the offense that he had knowledge that the weapon was in his vehicle.[3] Tr. 65. The court will, therefore, focus on this part of the exchange.

The court determines that Stone's question and Montgomery's response, in light of the circumstances, did not escalate the detention to a custodial interrogation. A similar question was asked by the officer during the traffic stop in *Coleman*, in which the Fifth Circuit held that *Miranda* warnings were not required. The officer in that case had received the defendant's consent to search the vehicle but before doing so, asked him "if he had any narcotics, weapons, or large sums of

---

[3] Although Montgomery contends that he seeks to suppress the statements only for this purpose, the court notes that the admissibility of the statements is not necessary for the Government to admit the gun's discovery into evidence because Stone conducted a proper vehicle search based on probable cause created by the marijuana odor, and that search inevitably would have led to the gun's discovery. *See Raborn*, 872 F.2d at 595 (determining that the discovery of a weapon in the defendant's vehicle would have been inevitable and the police could properly search his vehicle, and therefore the officer's prior questioning of the defendant about the gun's location did not render the gun inadmissible as fruit of questioning in violation of his Fifth Amendment rights).

money in the car" "which [the officer] normally did in similar situations." 610 F. App'x at 350. The court determined the officer never engaged the suspect in specific, lengthy, or accusatory questioning about any suspected offense—in spite of the fact the officer had received information the defendant might also be involved in a narcotics violation. Stone's open-ended question to Montgomery did not, in comparison, ask specifically whether Montgomery had any weapons in the vehicle. Stone testified that he routinely asks similar questions to gain "more information in order to do things safely." Tr. 40. The line of questioning is, thus, similar to *Coleman* and does not, in itself, support a finding that Montgomery was "in custody." The court also notes that the approach and interaction used by Stone were professional and not conducted in an argumentative, coercive, heavy-handed, or intimidating manner. Because the *Terry* stop never rose to the level of a custodial interrogation, *Miranda* warnings were not required, and Montgomery's statements are admissible at trial.

### III. Conclusion

For the reasons herein set forth, the court **denies** the Motion to Suppress Unlawfully Obtained Evidence and Statements. Accordingly, all items seized by law enforcement during the search and all statements made by Montgomery to Stone during their interaction in the patrol vehicle will not be suppressed and are admissible at trial, subject only to the Federal Rules of Evidence or any other rule or statute governing the admissibility of evidence at a criminal trial.

**It is so ordered** this 15th day of November, 2018.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge